UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

LARRY  NICKENS,                                    )
                                                   )
                        Plaintiff,                 )
                                                   )
            vs.                                    )
                                                   )        3:14-cv-00011-RLY-WGH
TYCO INTEGRATED SECURITY, LLC,                     )
Individually and d/b/a ADT SECURITY               )
SERVICES, INC.; and ADT SECURITY                  )
SERVICES, INC.,                                    )
                                                   )
                        Defendants.                )


**ENTRY ON ADT SECURITY SERVICES, INC.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT and PLAINTIFF'S MOTION TO
STRIKE**

ADT LLC, f/k/a ADT Security Services, Inc. ("ADT") (incorrectly named above),

moves to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.  In the alternative, ADT moves to limit Plaintiff's recoverable

damages to $500.  Plaintiff, Larry Nickens, moves to strike ADT's copy of the parties'

Residential Services Contract that it attached to its motion to dismiss.  For the reasons

explained below, ADT's motion to dismiss is **GRANTED** in part, and **DENIED** in part,

and Plaintiff's motion to strike is **DENIED** in part.

I.     **Background**

On August 21, 2009, Plaintiff purchased a burglar alarm system from ADT for his

home located in Boonville, Indiana.  (Am. Compl. ¶ 7).  On October 23, 2011, the alarm

activated for no apparent reason, emitting an extremely loud sound. (*Id*. ¶ 8). After Plaintiff unsuccessfully attempted to disarm the system himself, he contacted an ADT agent by phone, who told him to unplug the device. (*Id*. at ¶ 9). When that failed, the ADT agent told him to cut the wire to the device. (*Id*.). The sound of the alarm then stopped. (*Id*.). Plaintiff alleges that his exposure to the sound of the alarm during that time frame caused permanent damage to his hearing, including debilitating tinnitus. (*Id*. ¶ 11).

On September 13, 2013, Plaintiff filed the present lawsuit in the Warrick Superior Court. ADT subsequently removed the action to this court on grounds of diversity jurisdiction.

On April 8, 2014, Plaintiff filed his Amended Complaint which consists of four causes of action. Count I asserts a claim of common law negligence, and Counts II-IV assert claims under the Indiana Products Liability Act ("IPLA"). In particular, Count I alleges that ADT negligently advised Plaintiff to expose himself to the sound of the alarm, causing him personal injury. Count II alleges, *inter alia*, that ADT failed to warn the public and the Plaintiff of the health risks arising from exposure to the alarm sound, and failed to provide proper training concerning the safe and effective use of the alarm. Count III alleges that the burglar alarm is defective in its design, rendering it unreasonably dangerous to the average consumer, and Count IV alleges a breach of the implied warranty of merchantability under the IPLA – *i.e*., the burglar alarm is not reasonably fit for the ordinary purposes for which such goods are used, nor minimally

safe for its intended purpose. ADT seeks to dismiss Counts I-IV of Plaintiffs' Amended Complaint.

## II.     Motion to Strike

Plaintiff moves to strike ADT's copy of the Contract, attached to ADT's memorandum in support of its motion to dismiss as Exhibit A, on two grounds. First, Plaintiff argues that a comparison of the Contract in his possession, attached to his motion to strike as Exhibit 1, reveals several important discrepancies between his version and ADT's version. For example, unlike ADT's version, Plaintiff's version is not signed by Plaintiff nor an authorized ADT representative and lacks terms such as the monthly service charge, the estimated start date, and whether the system is customer owned or ADT-owned, just to name a few. (*Compare* Plaintiff's Ex. 1[1] *with* ADT's Ex. A). Based on these differences, Plaintiff questions whether the parties ever entered into a binding Contract.

In Plaintiff's Amended Complaint, Plaintiff alleges that he purchased a burglar alarm system from ADT on August 21, 2009. (Am. Compl. ¶ 7). The incident giving rise to this lawsuit occurred on October 23, 2011. (*Id.* ¶ 8). Thus, Plaintiff concedes that, prior to the time the alarm malfunctioned, he had been a customer of ADT for over two years. The court therefore finds that, by accepting the services of ADT for over two years, he assented to the terms of the Contract, whether he signed it or not. *Skelton v. General Motors Corp.*, 860 F.2d 250, 259 (7th Cir. 1988) ("A party may become bound

---

[1] Curiously, the handwriting appears to be exactly the same in both versions, and even contains the same scratch marks in the "Customer's Approval" box.

by a contract by accepting its benefits, even though he did not sign it."); *State v. Daily Express, Inc.*, 465 N.E.2d 764, 767 (Ind. Ct. App. 1984) (Although the absence of a signature will not defeat the validity of a contract, "some form of assent to the terms is necessary," and may be manifested by a party's conduct.).

Second, Plaintiff argues that the Contract is not central to his claims and was not referred to in his Amended Complaint. Defendant responds that Plaintiff's claims arise out of the burglar alarm system that was purchased by Plaintiff, and installed and monitored by ADT. The Contract forms the basis of the purchase, installation, and monitoring of the burglar alarm system. Thus, ADT argues, the Contract is central to his claims.

When a plaintiff refers to documents in a complaint that are central to the claims alleged, those documents become part of the pleadings. *McCready v. Ebay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). This is true even when, as here, the defendant attaches the document in support of a motion to dismiss. *Id.*

Although the Plaintiff did not refer to nor attach the Contract to his Amended Complaint, the court finds that it must consider the Contract, as it forms the entire basis of ADT's motion to dismiss. Since this is a motion to dismiss Plaintiff's Amended Complaint, however, the court finds that, to be consistent with the dismissal standard set forth below, the court may only consider Plaintiff's version of the Contract, not ADT's. Accordingly, Plaintiff's motion to strike ADT's Exhibit A is **DENIED** in part.

The court now turns to ADT's motion to dismiss.

## III.	Motion to Dismiss

### A.	Dismissal Standard

Pursuant to Rule 12(b)(6), a complaint may be dismissed if the plaintiff fails to state a claim upon which relief may be granted.  To survive a motion to dismiss, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting FED. R. CIV. P. 8(a)(2)).  Thus, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In addition, the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'"  *Id.*  (quoting *Bell Atlantic*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B.	Discussion

ADT argues that Plaintiff's claims are barred because: (1) he did not bring his claims within one year of the incident, as required by paragraph 10 of the Contract; (2) ADT did not owe Plaintiff a common law duty; and (3) ADT disclaimed all implied warranties related to the services and products provided by ADT, pursuant to paragraph 16 of the Contract.  In the alternative, ADT argues that Plaintiff's recoverable damages are limited to $500, pursuant to paragraph 6 of the Contract.  Plaintiff responds that his

claims are not based on the parties' Contract; instead, they are based on ADT's negligent advice and defective alarm, both of which caused him personal injury.

### 1. Time to File Suit

Paragraph 10 of the Contract reads:

> YOU AGREE TO FILE ANY LAWSUIT . . . YOU MAY HAVE AGAINST US . . . WITHIN ONE (1) YEAR FROM THE DATE OF THE EVENT THAT RESULTED IN THE LOSS, INJURY, DAMAGE OR LIABILITY OR THE SHORTEST DURATION PERMITTED UNDER APPLICABLE LAW IF SUCH PERIOD IS GREATER THAN ONE (1) YEAR.

ADT interprets this provision as requiring Plaintiff to bring his lawsuit within one year of the date of this incident that gave rise to this lawsuit; that being, October 23, 2012. Because Plaintiff did not file until September 13, 2013, argues ADT, his claims are barred.

The court does not agree with ADT's interpretation, because it fails to account for the second circumstance the court must consider – i.e., "or the shortest duration permitted under applicable law if such period is greater than one (1) year." The shortest duration permitted under Indiana law for Plaintiff's negligence and product liability claims is two years. IND. CODE § 34-11-2-4; IND. CODE § 34-20-3-1 (stating that a product liability action must be commenced within two years after the cause of action accrues or within ten years after delivery of the product to the initial user or consumer). Plaintiff filed his lawsuit within two years of the date his cause of action accrued. Accordingly, Plaintiff's negligence and IPLA claims are timely.

## 2. Common Law Duty

ADT asserts Plaintiff's negligence claim is barred because ADT does not have a common law duty to instruct their customers how to properly disarm their alarm system; instead, their relationship is governed by the Contract. Plaintiff argues that his claim is supplanted by the IPLA.

The IPLA governs "all actions that are: (1) brought by a user or consumer; (2) against a manufacturer or seller; and (3) for physical harm caused by the product." IND. CODE § 34-20-1-1. Thus, when a consumer seeks to recover from a manufacturer for physical harm from a product, the IPLA provides for a single cause of action, regardless of the plaintiff's substantive legal theories. *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002) (citation omitted) ("[T]he [IPLA] govern[s] all product liability actions, whether the theory of liability is negligence or strict liability in tort.") (quoting *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 212 (1981)); *Cincinnati Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 4:05-cv-49, 2006 WL 299064, * 2 (N.D. Ind. Feb. 7, 2006) (citing *In re Lawrence W. Inlow Accident Litigation*, No. IP 99-0830-C H/K, 2002 WL 970403 at *12 (S.D. Ind. Apr. 16, 2002)).

In Count I, Plaintiff alleges that "the acts of ADT . . . in advising [Plaintiff] to expose himself to the sounding alarm was negligence and proximately caused injuries and damages to Plaintiff as hereinafter set out." (Am. Compl. ¶ 14). The court interprets Plaintiff's claim not as a recast products liability claim nor a negligence claim, but as a simple breach of contract claim premised on ADT's allegedly faulty advice.

"A tort is '[a] legal wrong committed upon the person or property *independent of contract*.'" *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1249 (Ind. Ct. App. 1998) (quoting BLACK'S LAW DICTIONARY 1489 (6th ed. 1990) (emphasis added)).  The alleged source of Plaintiff's damages is premised on the ADT agent's instructions on how to disable Plaintiff's alarm.  That conduct is premised on the parties' contractual relationship.  Any failure on ADT's part to properly perform its contractual obligation might support a claim for breach of contract, but it cannot support a negligence claim.  ADT's motion to dismiss Count I of the Plaintiff's Amended Complaint is **GRANTED**.

### 3.    Limitation of Liability

ADT argues that Plaintiff disclaimed all implied warranties and, to the extent his claims survive, his damages are limited to $500.  Plaintiff responds that such disclaimers cannot operate to bar, and/or limit the recoverable damages in, a strict liability claim under the IPLA.  The disclaimers at issue are found in paragraphs 6 and 16 of the Contract, which state as follows:

> OTHER THAN THE LIMITED WARRANTY AND, IF PURCHASED, THE EXTENDED LIMITED WARRANTY, WE MAKE NO GUARANTEE OR WARRANTY OF ANY KIND, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. . . .

(Contract ¶ 16).

> IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT.  YOU AGREE THAT WE . . . ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING

DIRECTLY OR INDIRECTLY FROM THE SERVICES . . . WE
PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS
CONTRACT.  IF IT IS DETERMINED THAT WE . . . ARE DIRECTLY
OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE,
INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT
DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10%
OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS
CONTRACT. . . .  THEY ARE YOUR SOLE REMEDY NO MATTER
HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS
CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS
NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS
CONTRACT, STRICT LIABILITY . . . OR OTHER FAULT.

(Contract ¶ 6).

The Indiana Supreme Court's decision in *McGraw-Edison Co. v. Ne. Rural Elec.*

*Membership Corp.* governs this issue.  678 N.E.2d 1120 (Ind. 1997).  In that case,

Northeastern Rural Membership Corp. purchased electrical power station equipment from

McGraw-Edison for $71,000.  *Id.* at 1121.  The quotation that Northeastern accepted

stated that it was "subject to the terms and conditions" accompanying the quotation, one

of which limited the seller's [McGraw-Edison] liability for any claim to the purchase

price of the equipment.  *Id.*  A fire ensued four years later due to an electrical surge,

causing damages in excess of $750,000.  *Id.*  Northeastern sued McGraw-Edison, alleging

that McGraw-Edison's equipment, due to a design defect, did not act as a breaker to

prevent the surge from reaching the transformer.  *Id.*

The Indiana Supreme Court interpreted the interplay between the provisions of the

Uniform Commercial Code ("UCC")–Sales, which generally supports the enforceability

of limitations of liability in commercial transactions, and the Indiana Product Liability

Act, which codified strict liability in Indiana.  *Id.* at 1122.  The Court held that the

disclaimer did not bar Northeastern's strict liability claim. In reaching its decision, the Court noted that prior to the enactment of the IPLA, disclaimers of liability brought as defenses to a consumer's cause of action were highly disfavored. *Id*. at 1122-23. The Court also noted the IPLA "is both later in time and more specific in subject matter than the UCC," and not one of the IPLA's three statutory defenses "has ever been that the seller has included a boilerplate limitation of liability in the invoice or other routine (and typically unread) documents." *Id*. at 1123. Although the Court found in favor of the purchaser, it did not rule out the possibility that, with respect to sophisticated parties, a contractual waiver of the IPLA could never be enforced.

> If a true negotiation over risk allocation occurs, and specific language is used, or proof of knowing assumption of risk is offered, it may be that even a strict liability statute may be waived. But that does not appear in the record here, and we are not faced with that issue today. This record does not establish even a conspicuous and explicit provision barring strict liability claims. At least that much is required to establish waiver . . . even by a commercial buyer.

(*Id*. at 1124).

Like the disclaimer in *McGraw-Edison*, the disclaimers at issue here were part of a 6-page standard form contract. Although the disclaimers were printed in capital letters, the type font was very small and hard to read, and were located on pages 4 and 5 of the Contract. They were therefore not "conspicuous" as required by Indiana law. In addition, there is no allegation from which the court could infer that the parties engaged in a "true negotiation" of the terms of the Contract. Viewing the allegations of the Amended Complaint in the light most favorable to Plaintiff, the court finds the standard form disclaimers in paragraphs 6 and 16 of the Contract do not bar or limit the liability of

10

ADT with respect to Plaintiff's IPLA claims.  ADT's motion to dismiss Count IV or, in the alternative, to limit Plaintiff's damages to $500 is **DENIED**.

**IV.    Conclusion**

For the reasons set forth above, the court **GRANTS in part** and **DENIES in part**, ADT's Motion to Dismiss Plaintiff's Amended Complaint (Filing No. 17).  The court **GRANTS** ADT's Motion to Dismiss Count I of Plaintiff's Amended Complaint, and **DENIES** ADT's Motion to Dismiss Counts II-IV of Plaintiff's Amended Complaint. The court also **DENIES** in part Plaintiff's Motion to Strike (Filing No. 22).


**SO ORDERED** this 9th day of July 2014.

RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.